UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY W. ABRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14CV97 HEA |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 42 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's application for supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385. For the reasons set forth below, the Court will affirm the Commissioner's denial of Plaintiff's applications.

## **Facts and Background**

On June 11, 2013, Plaintiff appeared and testified before Administrative Law Judge, Carol Boorady, for hearing. Plaintiff also appeared to testify on April 29, 2011, before Administrative Law Judge Margaret Reeves. At that hearing Plaintiffs claim was denied and Plaintiff sought review by the Appeals Council.

The Council remanded to Administrative Law Judge, Boorady, for consideration of Plaintiff's maximum Residual Functional Capacity and to provide specific references to evidence in the record to support the limitations and to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. Plaintiff was 22 years old at the time of the June 2013, hearing. Plaintiff did not complete high school, but did complete the 9th grade and communicates in English. He was in special education classes through the third grade. Plaintiff has never worked in an environment outside the home and is single.

Plaintiff was diagnosed with a brain tumor in 2006, or 2007. As a consequence he suffers from headaches four or five times a week that may last up to three hours. He rates the pain at a seven, and it affects his ability to focus or concentrate, however he can follow the plot line on a television show. He usually takes Tylenol for the pain.

As a result of the tumor Plaintiff stated he can't do anything with one hand without the other hand trying to mimic it. This creates problems with writing and disallows his writing from being legible. A similar problem exists when Plaintiff uses a keyboard or tries to pour a cup of coffee. He also testified he has to use both hands to pick up a jug of milk. In addition to these concerns, Plaintiff stated he has problems sleeping. At the first hearing in 2011, he was using a CPAP

machine.  He now uses a BIPAR machine to aid in sleeping as it is more comfortable for him.  Since he has sleep apnea, this condition affects his ability to be attentive during the day and he has a tendency to fall asleep from time to time.

Plaintiff testified he experiences sharp pain in the lower back which is aggravated by bending down, standing for too long, and walking.  He can only walk about a block before he has to rest three or four minutes and can only stand for ten minutes and as a consequence he has to rest for about three hours out of an eight-hour day.

Ms. Slaise, a Vocational Expert testified at the hearing.  The ALJ put a hypothetical to Ms. Slaise of whether the individual could perform any competitive work considering an individual with no past work and 22 years old who could perform light work activity with limitations in walking.  The individual is limited to occasionally lifting up to 20 pounds and frequently carrying up to 10 pounds.  The individual can stand six hours out of an eight-hour workday with minimal walking of less than one hour.  Further the individual could sit eight hours of an eight-hour day and perform work that does not require climbing ropes, ladders or scaffolds and no more than occasional climbing on ramps and stairs.  The hypothetical individual should perform only occasional stooping, kneeling, crouching or crawling with only occasional reaching and fingering.  There could, however, be frequent handling but no writing as a primary job function.  After

lengthy and detailed inquiry on the record the vocational expert concluded there were jobs available with the proper DOT codes, even after the erosion of certain jobs that might otherwise be available for Plaintiff.

The ALJ found Plaintiff had the severe impairments of a benign brain tumor and morbid obesity within 20CFR416.920(c). However, the ALJ found that he did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1 (416.920(d), 416.925 and 416.926). The ALJ also concluded that Plaintiff had no past relevant work. The ALJ therefore concluded Plaintiff was not disabled.

The Appeals Council, upon considering the record from below denied the request for review on August 22, 2014.The decision of the ALJ is now the final decision for review by this court.

**Statement of Issues**

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issues in this case are whether the ALJ should have given controlling weight to the opinion of Buthaina Richeh, M.D., Plaintiff's treating physician; whether the ALJ properly evaluated Plaintiff's credibility; and

whether the ALJ resolved any conflicts between the *Dictionary of Occupational Titles* and a vocational expert's testimony..

**Standard To Determinine Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the

ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next

step. Id... At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.; Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

**RFC**

A claimant's Residual Functional Capacity (RFC) is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and

medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245

F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." Id. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

### ALJ Decision

The ALJ here utilized the five-step analysis as required in these cases. The ALJ determined at Step One that Plaintiff had not engaged in substantial gainful activity the application date of October 16, 2009. The ALJ found at Step Two that Plaintiff had the severe impairments of a benign brain tumor and morbid obesity. At Step Three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (416.920(d), 416.925 and 416.926).

As required, prior to Step Four, the ALJ determined the Residual Functional Capacity of Plaintiff to perform light work with the ability to occasionally lift and frequently lift and carry up to 10 pounds, stand for 6 hours during an eight-hour workday, do minimal walking for no more than one hour total during an eight – hour workday, sit for eight hours during an eight-hour workday, be able to alternate between sitting and standing positions once every 30 to 60 minutes for a few minutes while remaining at the workstation, never climb ladders, ropes, or scaffolds, but occasionally can climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl, occasionally reach and finger but can frequently handle, and finally cannot write as a primary job function.

At Step Four it was the finding of the ALJ that Plaintiff had no past relevant work.

At Step Five the ALJ concluded that considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. These included Counter clerk, Tanning salon attendant, and Dealer account investigator. The ALJ, therefore, found Plaintiff not disabled, and denied the benefits sought in the Application.

## Judicial Review Standard

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Id*. However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id*.

(quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)).

Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

**Discussion**

A. Did the ALJ Properly Give Partial Weight to Dr. Richeh's Opinion ?

The essence of Plaintiff's position is that the ALJ should have given controlling weight to Dr. Richeh's opinion. The record demonstrates that Dr. Richeh was the treating physician for Plaintiff. In her testimony of 2011 Dr. Richeh noted Plaintiff could stand or walk for less than two hours in an eight-hour workday and sit less than six hours due to lower back pain. In addition Dr. Richeh stated Plaintiff could handle frequently and constantly feel but could only

occasionally reach and finger.  Further, the doctor observed he could never kneel, crouch, crawl, or stoop.

The ALJ considered all the medical evidence that was available. It is the ALJ's role to determine the weight each medical opinion is due. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) ("It [is] the ALJ's task to resolve conflicts in the evidence . . . ."). An ALJ does not have to rely entirely on one doctor's opinion, nor is the ALJ limited to a simple choice of the medical opinions of record when the RFC is formulated. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [plaintiff's] physicians") (internal citations omitted). *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). An ALJ may reject the opinion of any medical expert, treating or examining, if it is inconsistent with the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001); *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) (an ALJ may discount a treating physician's opinion when it is inconsistent with the physician's clinical treatment notes).

The ALJ gave only partial weight to Dr. Richeh's opinion because portions of it were inconsistent with the clinical findings of record, including those contained in Dr. Richeh's own treatment notes. The substantial evidence in the record belies the position taken by Plaintiff. The neurologic examinations were generally normal, revealing full strength, normal grip strength, normal sensation, and a normal or satisfactory gait. The tumor was stable and remained unchanged during the relevant period. The ALJ emphasized that physical examinations of Plaintiff did not reveal any significant abnormal medical signs. In short the record buttresses the conclusion of the ALJ in that the clinical findings were inconsistent with Richeh's notes. Much of the findings and conclusions of Dr. Richeh are unsupported by any other credible evidence in the record. The ALJ properly evaluated Dr. Richeh's opinion. T he ALJ adopted the portions of Dr. Richeh's opinion that were supported by the evidence of record and discredited the portions that were inconsistent with the medical findings of record and appear to have been based upon Plaintiff's subjective complaints.

## B. Did the ALJ Properly Evaluate Plaintiff's Credibility?

Plaintiff proffers that the ALJ incorrectly evaluated Plaintiff's credibility. The essence of the Plaintiff's position here seems to be that the ALJ failed to properly apply the factors set out in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) relative the evaluation of Plaintiff's subjective complaints of pain. For

the sake of clarity these factors include the claimant's daily activities; the duration, frequency, and intensity of pain; the dosage, effectiveness, and side effects of medication; any precipitating and aggravating factors; any functional restrictions; the claimant's work history; and the absence of objective medical evidence to support the claimant's complaints. *See id.*; *see also* 20 C.F.R. § 416.929. However, an ALJ need not discuss or even cite every *Polaski* factor. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011); *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007).

It is axiomatic that the ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence as a whole and the ALJ sets forth the inconsistencies in the record. *See Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003); Social Security Ruling (SSR) 96-7p. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a reviewing court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713–14 (8th Cir. 2003); *see also Baldwin*, 349 F.3d at 558 ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").

The ALJ, here, set forth that there was a lack of supporting objective evidence relative Plaintiff's subjective complaints. *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (holding that an ALJ may determine that "subjective

- 15 -

pain complaints are not credible in light of objective medical evidence to the contrary"). Without being too awfully repetitious, Plaintiff's tumor was stable and remained unchanged during the relevant period and physical examinations of Plaintiff did not reveal any significant abnormal medical signs. In addition, the record reflects that neurologic examinations were generally normal, revealing full strength, normal grip strength, normal sensation, and a normal or satisfactory gait.

An ALJ may properly consider a claimant's failure to comply with medical advice as a factor detracting from his credibility. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Plaintiff, here, continued to smoke despite being counseled to quit smoking on a number of occasions. *See Choate v. Barnhart,* 457 F.3d 865, 872 (8th Cir. 2006) (holding that an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and *quit smoking*) (emphasis added). Mr. Abright also failed to comply with medical advice to exercise and improve his diet. Dr. Richeh even noted that Plaintiff wasn't compliant with the sleep apnea treatment regimen. The record also demonstrates that he went extended periods without following up on treating with a neurologist relating to the brain tumor and failed to follow up with the obesity center.

The ALJ noted that Plaintiff's description of his symptoms were inconsistent with the extent of his daily activities. *See* 20 C.F.R. § 416.929(c)(3)(i) (the agency

must consider the claimant's "daily activities" when evaluating his symptoms); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (inconsistencies between a claimant's daily activities and her alleged limitations detracted from her credibility). Specifically, Plaintiff alleged disability due to difficulty with his fine motor skills. But as noted in the record, Plaintiff played video games every day for an hour at a time and sent text messages using a cell phone. It is reasonable to conclude that such activity undermined that he had debilitating manipulative limitations.

The record also supports the recollection of the ALJ of circumstances and matters reported by Plaintiff in his Function Report. The ALJ was justified in utilizing that report in formulating conclusions and findings.

The ALJ properly utilized and applied the factors set forth in *Polaski* . consistent with the holding in *Perkins v. Astrue*, 648 F.3d 892, 900–01 (8th Cir. 2011) the court will defer to the ALJ's assessment of credibility.

C. Was There Unresolved Conflict Between the Vocational Expert's Testimony and the *Dictionary of Occupational Titles*?

The ALJ questioned a vocational expert about a hypothetical claimant with Plaintiff's RFC and vocational profile. *See Cox*, 495 F.3d at 620 (a vocational expert's response to a complete and correctly-phrased hypothetical provides substantial evidence for the ALJ's step-five conclusion). The vocational expert

testified that a hypothetical claimant with Plaintiff's RFC could perform the jobs of counter clerk, tanning-salon attendant, and dealer account investigator. In light of that testimony, the ALJ concluded that Plaintiff was not disabled.

The vocational expert testified that a hypothetical claimant with Plaintiff's RFC could perform various light jobs and indicated that her testimony did not conflict with the *Dictionary of Occupational Titles (DOT)*. The ALJ gave great time and detail in the exploration of any possible conflict. The ALJ specifically made inquiry of the vocational expert about the difference between light work, which could involve walking up to six hours per day, and her RFC finding that Plaintiff could walk for only one hour per day. In response, the vocational expert opined that there were some jobs within each broad occupational category that she identified which did not involve walking more than one hour per day. Thus, the vocational expert initially responded that there was not necessarily a conflict between the *DOT* and her testimony. After considering the issue further, the vocational expert clarified that there was a conflict between her testimony and a literal reading of the *DOT*. The vocational expert identified a conflict because the *DOT* does not address every part of the ALJ's RFC assessment, including the need for a sit/stand option. The vocational expert identified a conflict when comparing a literal reading of the *DOT*'s maximum requirements for each occupation with the ALJ's RFC assessment. The Eighth Circuit has rejected that there is a conflict

between the need to alternate between sitting and standing and the definition of light work in the *DOT*. *See Reynolds v. Barnhart*, 36 F. App'x 575, 576 (8th Cir. 2002).

Plaintiff's argument is deficient because "*DOT* definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.'" *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007)). "'The *DOT* itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.'" *Id.* (quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000)). There was no conflict in the testimony, conclusions and statements of the vocational expert and the *DOT* definitions.

In addition, even if there were a conflict it was properly resolved by the ALJ. The *DOT* controls only if the vocational expert does not adequately rebut the *DOT*. *See Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010). The ALJ may rely upon the vocational expert's testimony rather than the *DOT* if the vocational expert provides a reasonable explanation. *See* SSR 00-4p. A reasonable explanation can be based upon a vocational expert's own experience. *See id*.

As noted earlier the ALJ went to great depths to resolve any inadequacies, confusion, or conflict in the testimony of the vocational expert as that might relate

to the *DOT*. The vocational expert responded that she based her opinion upon her experience and further elaborated why certain jobs could be performed with minimal walking or with alternating between standing and sitting.

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 8th day of January, 2016.

_____
   HENRY EDWARD AUTREY
  UNITED STATES DISTRICT JUDGE